(40 South. 855.)

No. 15,748.

CUSACHS & CO. et al. v. SEWERAGE & WATER BOARD OF NEW ORLEANS et al.

(March 12, 1906.)

1. DAMAGES—CONTRACTS—RESCISSION.

When the proprietor exercises the right accorded to him by article 2765, Civ. Code, to put an end to the contract at pleasure, he does not violate the contract, but merely exercises a legal right which he has under the contract. Hence, in such a case, the contractor cannot recover damages as for breach of contract—for example, for injury to his reputation as a contractor—but only such amount as he may be entitled to in pursuance of the contract; and that amount is the expenses incurred by him up to date, plus such profits as he can show he would have made if permitted to complete the contract.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 326–334.]

2. SAME — BREACH OF CONTRACT — REMOTE DAMAGES.

For breach of contract through bad faith even in the sense of ill will, a contractor can recover no more than the damages which are the direct and immediate consequence of the breach. If, as an effect of the breach, he is deprived of the use of the only collateral he possesses on which to raise money for saving from the pursuit of his creditors a business he is carrying on separately and independently of the contract, and his creditors seize and sell this business, the loss of this business is only a remote consequence of the breach of the contract, and cannot be recovered as damages for the breach of contract.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Cusachs & Co. and Gasper Cusachs and Max A. Orlopp against the sewerage and water board of New Orleans and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Clegg & Quintero, for appellants. Omer Villeré and Philip Stephens Gidieré, for appellees.

PROVOSTY, J. The plaintiffs entered into a contract with the defendant board for the construction of sewers in the city of New Orleans, they furnishing the materials, and they gave a bond conditioned to hold said board harmless against all suits that might grow out of the execution of the contract. To protect the surety on the bond plaintiffs deposited $6,500 of mortgage notes. These notes were to be returned only upon the cancellation of the bond or the completion of the contract. On February 2, 1904, the defendant board took the contract away from plaintiffs after it had been partially executed.

In June following the plaintiffs filed suit against the defendant board, claiming $14,183.17 for extra labor and materials furnished, and for loss of time in the course of the execution of the contract. They filed with their petition an itemized statement of the amount thus claimed. The defendant board denied the claim, but admitted that it owed plaintiffs $3,800 for work done under the contract; and it tendered the amount and deposited it in court. That suit is still pending.

The present suit was filed in April, 1905. The plaintiffs allege all of the foregoing facts, and allege that the taking away of the contract was done arbitrarily, in bad faith, "with the intention to cause petitioners loss and damage." They allege, further, that in the latter part of the year 1903 they went into the business of quarrying stone in the city of New York, and expended a large amount of money in erecting a plant and appurtenances, and in acquiring valuable rights and franchises for the carrying on of said business; that in September, 1904, they needed $1,500 to save their said business from being seized by their creditors, and that they were unable to procure the money because the only security they had to offer was the mortgage notes deposited to protect the surety on the bond, and that the surety was willing to return the notes if the defendant board would cancel the bond, but that although the defendant board was indebted to petitioners in a large amount and admitted an indebtedness of $3,800, and although the members of said board were fully advised of this situation of affairs, and warned that by refusing to cancel said bond they would cause the petitioners great and serious loss, they arbitrarily, in bad faith, and unlawfully refused to do so, notwithstanding the repeated requests of the petitioners, and that they persisted in said refusal until February 11, 1905, and that in consequence of said refusal the petitioners in August and September, 1904, lost their said quarrying business, together with the plant, appurtenances, etc., having been forced to make an assignment of same to their creditors; that the said refusal to cancel said bond caused petitioners "damage in excess of $25,000 for the right, privileges, immunities, and franchises and the loss of profits which petitioners would have made and in the sum of $15,657.34 money actually spent in erecting said plant and appurtenances; and that by illegally taking away said contract from petitioners, and by refusing to allow petitioners to perform same, and by letting out same to other parties, the defendant board completely ruined the general business reputation, standing, and credit of petitioners as

contractors, to their damage $20,000." They pray judgment in solido against the defendant board and the members thereof individually in the sum of $60,657.34.

The defendants interposed exceptions of no cause of action and prescription of one year; and the defendant board filed in addition a plea of lis pendens.

The damages are claimed under two heads: Loss of reputation, and loss of quarrying business; the former loss having resulted from the taking away of the contract, and the latter from the refusal to cancel the bond.

Article 2765, Civ. Code, provides:

"The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require."

The defendant board had, therefore, the legal right to cancel the contract at pleasure, upon paying to the contractor the expenses already incurred for labor and materials, and (in the language of the article) "such damages as the nature of the case may require."

These damages, it was held in the case of Dugue v. Levy, 114 La. 21, 37 South. 995, are restricted to the profits the contractor can show he would have made if permitted to complete the contract.

The reason is that the contract is not violated by the exercise of this right to cancel, which is read into it by operation of law and forms part of it, the situation being the same as if the contractor had expressly agreed that such right should exist, and that, so long as the contract has not been violated, the proprietor cannot be made to pay damages as for violation of contract. He cannot be made to pay more than the amount he has agreed to pay under the contract. If the contract has been completed, the amount thus payable is the contract price, and represents, if there has been a profit, the sum of the expenses plus the profit. If, owing to the exercise of this right to cancel, the contract has not been completed, the amount payable by the proprietor is, in like manner, the sum of the expenses incurred up to date, plus the profits which the contractor can show he would probably have made if permitted to complete the contract.

The damages under the second head we find are too remote and indirect. For a breach of contract, even through bad faith in the sense of ill will, "the debtor is liable only to such damages as are the immediate and direct consequence of the breach of contract." Civ. Code, art. 1934, par. 2.

It is sometimes difficult to determine whether a certain result is or not a direct and immediate consequence; but such difficulty does not present itself in the instant case. Between the contract and the quarrying business there was no connection whatever, except that the contractors and the owners of the quarrying business happened to be the same persons. The true and direct and immediate cause of the loss of the business was the action of the creditors. The next cause in regular order was the existence of certain debts which plaintiffs did not pay. Granting that plaintiffs would have been able to pay, and would have paid, the debts if the bond had been canceled, still the cancellation of the bond would only be one of the links in the chain of causes, and a remote one at that. Pothier supposes the case of a man who fraudulently sells to a farmer a cow infected with a contagious distemper, whereby the farmer loses his working stock, and as a consequence his crop, and as a further consequence is unable to pay his debts and loses his property, which is seized and sold. The great civilian holds that the loss of the property is a remote and indirect consequence of the fraud, and has no necessary relation to it, and does not form a sufficient basis for a

claim of damages from the seller of the cow. Poth. Obli. 166.

We rest our decision on the remoteness of the damages; but it is not so clear that it might not be rested upon another ground. The contract is alleged to have been taken away on the 2d of February, 1904, and the quarrying business is alleged to have been lost in August and September, 1904. Now, the bond having been given to hold the defendant board harmless against such suits as might grow out of the execution of the contract, it had to remain in force so long as prescription had not accrued against the right to bring these suits; that is to say, for one year from the date of the act from which the suit would arise. The defendant board had, therefore, the right to retain the bond for one year from the date of such acts. What was the date of the last of the acts of the plaintiffs under the contract does not appear with certainty from the petition; but a very strong inference arises that the obligation of the plaintiffs to protect the defendant board against such suits continued to exist for one year from the date of the cancellation of the contract, and that as a consequence the defendant board continued for that length of time to have the right to retain the bond which secured that obligation. Reckoning the prescription from the date of the termination of the contract, February 2, 1904, the loss of the quarrying business in August and September, 1904, would have taken place within the time during which the defendant board had a right to retain the bond, and hence the defendant board could not be held responsible.

The fact that defendant board was indebted to plaintiffs can play no part in the case. Whatever the board owed the plaintiffs under the contract it would have been bound to pay on demand, and could not have retained as a protection against the contingent liability to suits. This protection had been provided for by the giving of the bond, and the board would have been utterly without right to withhold payments on the score of such protection.

It is said in the brief of plaintiffs that the refusal to cancel the bond amounted to a tort. Doubtless this view is urged because of the greater elasticity of the rule of damages in tort than in contract. But we can see no ground whatever for such a contention. The duty to cancel this bond was not imposed by statute or by any general law of society, but, if at all, exclusively by the contract. Hence its omission could not amount to more than to a violation of the contract.

Judgment affirmed.