Plaintiff, a building contractor, sues to recover from the defendants, Dominic Eugino and his wife, the sum of $1650.00, the balance he claims to be due him on a contract entered into between them for the construction of a five room residence in the city of Baton Rouge. The contract was for the full sum of $4650.00 on which the defendants had paid $3000.00, leaving the balance claimed. It was a very short and simple contract dated April 30, 1946, in which plaintiff obligated himself to furnish all materials and labor, excluding that necessary for plumbing, electrical services and painting, for the sum of $4650.00. In the contract as written, there was no time limit placed on the contractor.
Plaintiff alleges that after having performed all the services required of him under the contract for which he had been paid the sum of $3000.00 by the defendants, he was prevented from completing the same by the actions of the defendants in moving into the building before the flooring had been laid, the doors and windows set, all sheet-rock put up and all general inside work finished. He alleges that they moved in over his protestations and with full knowledge of the condition of the house at the time.
The defendants, in their answer, attempt to justify their action in moving in, on the ground that they were to be evicted from the house which they were occupying; that plaintiff had been informed by them that they had to have their house ready and that he had in fact agreed to so have it ready for occupancy at the time they moved in. They further set out that on plaintiff's refusal to complete their home, they had to have the work done themselves at a cost of some several hundred dollars and they reconvene against him for the sum of $327 for damages for breach of contract, in addition to which, Mrs. Eugino claims the sum of $500.00 for inconvenience and lack of comfort she endured and for the humiliation she was subjected to, causing her to have a nervous breakdown. Those were *Page 410 
the issues on which the case was tried and decided in the lower court. Judgment went in favor of the plaintiff in the sum of $500.00 and defendants have appealed.
We think it is important to note that the contract to build this house was entered into on April 30, 1946, at which time, as shown by the testimony in the record, and as is also commonly known, building material was scarce and in certain respects, some of it very hard to obtain unless a person was willing to buy on the black market. We may well suppose that is the reason why the written contract did not specify a time limit within which this house was to be completed and ready for delivery. We believe however that the proof shows that plaintiff performed the services required of him in as diligent a manner as he could under the circumstances. There is certainly nothing to show that he purposely delayed any part of the work. Although by no means ready for occupancy on the night of July 31, 1946, when defendants moved in, we nevertheless believe that the stage it had then reached was an indication that plaintiff had done considerable work on it during the three months previous to that date. We don't think therefore, that the defendants had the right to move in and thus prevent him from fulfilling the conditions of his contract unless there was a specific agreement between them entered into subsequently, by which plaintiff bound himself to have the house ready for them on the day they did move in. Whether or not there was such an agreement presents a factual question and it is no doubt on that question that the case was decided against the defendants in the lower court.
The written contract being silent as to a date-line for the completion of the house and the defense being a special one that there was an agreement subsequently made between them that the house would be ready on a certain day, the burden of proof fell on the defendants to show that such an agreement really existed. We find that they have failed to carry that burden.
The proof they offered and rely on principally is the testimony of Mrs. Eugino who states that on the night of June 14, 1946, when she gave plaintiff a check in the sum of $1000.00 he told her the house would be ready for occupancy on July 15, definitely, and that acting on the representation he made, she notified her landlady that they would vacate the house they were renting by July 20. In addition to her testimony on this point, they offered that of her father who speaks rather vaguely of having seen the plaintiff one Sunday afternoon in front of the Picadilly restaurant on which occasion he told him that the house would be ready for them when they got ready to move in. They also produced a witness by the name of Sidney S. Day who testified that when they were applying the asbestos siding, plaintiff told him that Mr. and Mrs. Eugino could have the house in two weeks. All of this testimony is contradicted by the plaintiff who states that it would have been unreasonable, in view of the conditions existing in the construction business at that time, to have made any such promises as Mrs. Eugino says he did. We are inclined to agree with him that because of those conditions it would have been a rather rash promise for him to make.
In further corroboration of her testimony on this point, Mrs. Eugino refers to a letter she wrote plaintiff in which she says he was notified of their contemplated moving in the house. This letter is not in the record and its contents are not definitely known. It is not disputed however by the plaintiff that he did receive such a letter from her, but it was dated July 29, 1946, two days before she actually moved in. He says that he received it on the 30th and that he tried to see or communicate with Mrs. Eugino to tell her not to carry out her intention of occupying the house but that she was not at home and he never could contact her personally. Mrs. Eugino moved in at night on the 31st, and he knew nothing more about her actions until he went to work on the building on the following morning.
The main argument made by counsel for defendants appears to be that plaintiff should have protested at their moving in the building, as indeed he had alleged in his petition he had done repeatedly. But if he had made no promises to them to have the house ready, there was no reason why he should have been called on to make *Page 411 
any such protest. It seems to be a most unusual and rather unreasonable thing for people to do to move in a house that apparently was so far from being ready for occupancy as was this one. Had these defendants been pressed by some urgent reason for having to have their house ready, that might fortify the position that they had obtained a promise from plaintiff to complete it within a certain time. But no such reason appears and none seems to have existed except the desire of moving into a new home although they knew full well that it was then in no condition to be occupied. This is no better evidenced than by Mrs. Eugino's invitation to one of her friends to go "camping with them" in their new home. Whilst they made allegations in their answer to the effect that they were threatened with eviction proceedings by the landlady from whom they were renting, they admit on the trial that there never were any such threats made. Mr. Eugino is a World War veteran and as such enjoyed all the benefits of the G.I. Bill of Rights, among which was security of a home, even though rented, for a period much longer than it would have taken to have their new home completed.
Stress is laid by counsel for defendants on the fact that even after they had moved in, plaintiff never spoke a word to either of them in protest of their action. This, it is urged, can be construed as an acquiescence on his part. But no stronger protest could he have made, than by refusing to work any longer on the house and leaving the job. For our part we don't understand how they could have expected him to go on with the work with a family of three living in the house, in the condition in which it was.
The only law that is involved in the case is that which concerns the rights of one party to a contract who is prevented by the action of the other party from fulfilling all of his obligations thereunder. In this connection we think that Art. 2765 of the Revised Civil Code is applicable. This article is found in Section 3 of Chapter 3, Title IX. The title of this section is "Of Constructing Buildings According To Plots, And Other Works By The Job, And Of Furnishing Materials", and the article cited reads as follows: "The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require." Whilst in this case, the proprietors, defendants in the suit, did not specifically cancel the contract, that in effect, is what their action amounted to.
It may be that Article 2040 of the Civil Code is also pertinent to the question at issue; not in the form in which it appears in the English Text, but as it was explained by the Supreme Court in the early case of Walls v. Smith, 3 La. 498, in its resort to the French text in construing its real meaning. The article is found in that chapter of the Code treating of "Obligations" and has particular reference to the fulfillment of conditions in obligations. It reads as follows: "The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it." As pointed out in the cited case, it is difficult to attach any precise meaning to the rule laid down according to that text which presents a very different idea from that conveyed by the French text. The corresponding article in the Code of 1825 is Article 2035, the French text of which follows: "La condition est réputéé accomplie, lorsque c'est le débiteur obligé sous cette condition qui en empeche l'accomplissement." The Court, in Wall v. Smith, supra, interpreted that to mean "that the condition is considered as accomplished, when the debtor, whose obligation depends on this condition, prevents the accomplishment of it." A literal translation of the article imports that very meaning which is clear and precise. The Supreme Court apparently approved it in the later case of Fowler v. Phillips et al. 159 La. 668, 106 So. 26. In applying it in the case before us to the contract under consideration, it would seem that the plaintiff contractor had, as a condition to fulfill under the contract, the completion of a house and its delivery, when completed, to the defendants, who then became obligated to pay him the full amount or any balance that may be due thereunder. Their obligation depended *Page 412 
upon the fulfillment of the condition that the house was to be completed. This, the contractor was prevented from doing by their having moved into the house before completion. Nevertheless under the rule laid down, the condition is considered as having been fulfilled and the contractor is certainly entitled to redress.
The trial judge allowed plaintiff the sum of $500.00 reaching that amount by deducting the amount of money he would have had to spend for labor and material to finish the job from the $1650.00, balance due on the contract price. Plaintiff testified that he would have had to spend between $1100.00 and $1150.00 and that his profit would have been the difference between that and the $1650.00. The trial judge took the larger figure of $1150.00 and allowed the difference of $500.00, representing the profit he would have made. That is the measure of damages to be recovered under Article 2765, Civil Code. See Dugue v. Levy, 114 La. 21, 37 So. 995; Cusacha Co. v. Sewerage Water Board, 116 La. 510, 40 So. 855.
Judgment appealed from is affirmed.