454 So.2d 1130 (1984)
Mrs. Vivian KINCHEN
v.
David GILWORTH, Margaret Johnson, and Jim Woods, a/k/a Burl Mahl, d/b/a Carousel Construction Company, and Dixie Savings Association.
No. CA-1715.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1984.
Writ Denied October 26, 1984.
*1131 Plauche F. Villere, Jr., New Orleans, for plaintiff-appellant.
Harry A. Burglass, Metairie, for defendants-appellees.
Before REDMANN, C.J., and GARRISON and BARRY, JJ.
BARRY, Judge.
Plaintiff appeals the dismissal of her suit for breach of a contract to repair and add on to her home. The defendant/contractor reconvened for sums allegedly due.[1] The trial court found plaintiff cancelled the contract without cause and also dismissed defendant's reconventional demand for lack of proof.
Plaintiff argues the defendant abandoned the job and she is entitled to the money spent to complete the work and damages. Defendant claims reasonable profits.
On December 3, 1977 Vivian Kinchen signed a contract with Carousel Construction Company for home improvements. The $17,950 contract contained 44 specifications with stage payments.[2] It is undisputed that work began in mid-January, 1978 and apparently continued uninterrupted through the middle of April when work ceased.
The record convinces us that Carousel made several attempts to complete the job but was ejected from the premises by plaintiff. John Pastrano, Carousel's foreman, stated Kinchen constantly caused problems. On one occasion, after sheetrock work was complete, the workers called Pastrano to the job because Kinchen had torn out all sheetrock in the original part of the house. Kinchen initially denied this, but added: "I guess he must be talking about the old sheetrock, the existing sheetrock that was in the house." She admitted complaining about the sheetrock in the front room and wanted it paneled. The contract did not provide for new sheetrock or paneling in the old house.
The contract specified Carousel would use Kinchen's kitchen appliances, except the stove and cooktop. Kinchen admitted she decided to modernize the kitchen and not use the old appliances. In particular, under the contract the original sink was to be taken out and reinstalled later. Testimony shows that Kinchen would not allow the sink to be used and she threw it away. Kinchen denied this, but said "That sink wasn't any good anyway."
From these and other incidents it is apparent Kinchen interfered with Carousel's workers and they predictably refused to *1132 work. Carousel sent other workers to the job but Kinchen literally ran them off.
There is no evidence to support Kinchen's allegation that Carousel stopped work because the company ran out of money. We therefore agree that Kinchen's actions effectively cancelled the contract without legal cause.
The case is controlled by LSA-C.C. art. 2765:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.
Our courts have consistently held this rule sufficiently broad to cover loss of profits. Dugue v. Levy, 114 La. 21, 37 So. 995 (1904) said:
"the proprietor, on the one hand, shall have the legal right to put an end to the contract, and the contractor, on the other hand, shall be placed in as good a position as he would have been if he had been permitted to complete the contract." Id. at 999.
The owner's liability is limited to quantum meruit (for labor and materials) plus profits the contractor would have realized[3] and is measured by the balance payable under the contract less the amount necessary for the contractor to complete the work. Roland v. American Casualty Company, 227 La. 727, 80 So.2d 387 (1955).
Kinchen's testimony and exhibits relate to the work that was done, not what was necessary under the contract. There is no dispute that the completed job was not as contemplated. The burden of proving omissions or unfinished work is on the owner, Boydstun v. Johnson, 401 So.2d 629 (La.App. 3d Cir.) writ denied 404 So.2d 1262 (La.1981).
Kinchen paid Carousel $13,483.34, leaving a $4,466.66 balance. Mrs. Johnson testified it would cost at least $5,776.60 to finish the job.[4] Therefore, Kinchen overpaid Carousel by $1,309.94 and is entitled to this amount since her liability is only in quantum meruit plus profits. This sum represents labor and materials to complete the work, hence Mrs. Johnson has already recovered her anticipated profits.
Kinchen cancelled the contract without cause and is not entitled to damages.
The judgment is amended to award plaintiff $1,309.94 and affirmed.
AMENDED; AFFIRMED.
 APPENDIX
CONTRACT COST TO
ITEM NO. COMPLETE TESTIMONY BY MRS. JOHNSON
 1, 2. -- Done by Carousel.
 3. $550.00 Owed to the electrician for unfinished work. Everything
 was roughed in except the kitchen and the
 fixtures were not completely installed. This amount
 covers all unfinished electrical work under the contract.
 See items 8, 24, 31, 34, 37.
 4. $500.00 Cost of unfinished plumbing work. Carousel dug a
 new sewer line and connected it to the existing line.
 The plumbing for the new baths and laundry room
 was done. Tubs and some of the toilets had been
*1133
 installed. The lavatories were not installed and the
 kitchen was not connected.
 5. -- Completed, except for paneling. See item 12.
 6, 7. $800.00 Nothing was done by Carousel. It would cost this
 amount to comply and also covers completion for
 items 30 and 35 which also concerned the garage.
 8. -- See item 3. This was included in the remainder of
 electrical contract ($550.00).
 9, 10. -- Done.
 11. -- Present sheetrock had been patched.
 12. $ 60.00 See item 5. All done but paneling.
 13. -- Sheetrock for addition, item 5, was completed.
 14. $578.60 Kitchen cabinets were not installed. Mrs. Johnson
 testified middle of the line cabinets, used on many of
 her jobs, would cost net $631.00 but only $378.60
 with the discount. A price quote was entered into
 evidence (D-2). The labor was $200.00.
 15. $358.00 Nothing was done. Cost of built-in oven $179, cook-top
 $119 and labor $60. Cost of the hood not counted
 because it was not in the original contract. See also
 item 28.
 16. -- Done.
 17, 18. $625.00 Carousel was to install 10 interior doors per the
 sketch. 5 cost $30 each and $25 each to install. The
 other 5 were bi-fold doors at $40 each and $30 each
 to install.
 19. -- Done.
 20. -- Tile was not installed in kitchen and bathroom floor.
 However, Mrs. Johnson did not testify as to the cost
 to complete this work. Mrs. Kinchen quoted prices
 for installing ceramic tiles on the walls and linoleum
 on the floors, but this was not what was in the
 original contract.
 21. $300.00 Not done. The rubber-backed carpeting would cost
 $3/yard for 80 yards or $240 plus $60 for labor.
 22. $145.00 Everything was done except installation of the wall-hung
 lavatories at $145.00.
 23. $160.00 Not done. Two solid wood exterior doors were to be
 installed. (See also item 44). The cost was $50 each
 and labor $30 each.
 24. -- Not done, but included in total amount owed to
 Carousel's electrical contractor: see item 3.
 25. -- Done.
 26. -- The evidence was insufficient. This was not done by
 Carousel but it was unknown how many window
 panes were broken. Mrs. Kinchen replaced all windows
 with storm windows. This was not in the
 contract.
 27. $ 65.00 Re-caulking was not done. The estimated cost for
 labor and materials was $65.00.
*1134
 28. -- See item 15.
 29. -- No cost.
 30. -- Not done. Included in cost of items 6 and 7. ($800
 to complete.)
 31. $1113.00 About half of this work was done. Carousel installed
 the ducts and furnace in the attic. The electric
 work was included in the balance due on the
 electric contract ($550, item 3). The compressor had
 not been installed. Mrs. Johnson stated she owed
 $1,113 for the remainder of the work on the air
 conditioning system, which included the compressor.
 32. -- See items 17 and 18.
 33. $130.00 All work completed except installation of paneling in
 closets. The estimated cost for labor and materials
 was $130.00.
 34. $ 4.00 Not installed. Cost would be $1.00/closet for 4
 closets.
 35. -- Not done but included in cost of items 6, 7 and 30
 ($800.00) to complete garage area.
 36. -- Completed.
 37. -- Included in amount to complete electric work ($550)
 see item 3. (See also 8, 24, 31 and 34).
 38. $ 52.00 Relocated utility room but did not install tile. Estimated
 cost was $27 for materials and $25 for labor.
 39. $336.00 Ceilings were painted. Paneling was not installed.
 Estimated cost was $96 (32 sheets at $3/sheet) and
 $240 for labor.
 40. -- Trash was hauled by Carousel as it accumulated.
 41. -- No costno work involved.
 42. -- Smoke detectors were not installed. There was no
 testimony as to what was the cost of installation.
 43. -- Completed.
 44. -- Not done. See item 23.
 ___________
 $5,776.60 Cost to complete work.
NOTES
[1] Other defendants were dismissed prior to trial.
[2] The original contract was for $14,450.00 but changes were approved by both parties.
[3] Had the owner cancelled for cause, Art. 2765 would not apply and the contractor would not be able to recover lost profits. Peterson v. Sutter, 4 La.App. 180 (Orl.1926).
[4] Status of the contract's 44 specifications is detailed as an appendix.