408 So.2d 961 (1981)
Floyd Ray PORTER, Plaintiff-Appellant,
v.
Ben JOHNSON, III, Executor of the Succession of William Campbell Nabors a/k/a W. C. Nabors, Defendant-Appellee.
No. 14724.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
Rehearing Denied January 18, 1982.
Writ Denied March 12, 1982.
*962 Tucker, Jeter, Jackson & Victory by Robert McLean Jeter, Jr. and Greene, Ayres & Mayo by James E. Ayres, Shreveport, for plaintiff-appellant.
Colvin, Hunter, Brown, Plummer & Means by Robert E. Plummer, Mansfield, and Ferguson & Rives by James D. Rives, New Orleans, for defendant-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
En Banc. Rehearing Denied January 18, 1982.
HALL, Judge.
Plaintiff, Ray Porter, filed suit against the executor of the succession of Will Nabors within one year after the death of Nabors for "recognition of claims for services rendered." Alleging that during the period from July 1972 until the decedent's death in December 1977, he assisted Nabors in acquiring oil and gas leases over a four-parish area under an oral joint venture agreement whereby plaintiff was to receive *963 overriding royalty interests upon termination of the venture, plaintiff sought judgment for the value of the overriding royalty, alleged to be approximately $1,000,000, plus expenses incurred, subject to a credit for $67,500 paid by the decedent to plaintiff on account. Alternatively to his claim under the alleged joint venture agreement, plaintiff sought recovery of the same amount under principles of unjust enrichment or quantum meruit. The defendant executor denied the existence of the joint venture agreement and denied any liability or indebtedness to the plaintiff, alleging plaintiff had been fully paid for services rendered to the decedent.
After trial, the district court concluded in comprehensive written reasons for judgment that plaintiff failed to establish his entitlement to overriding royalties or the value thereof because parol evidence was not admissible under LSA-C.C. Art. 2275 and even if parol evidence were admissible, the requirements of the Dead Man Statute, LSA-R.S. 13:3721 and 3722, were not met in that the alleged debt or liability was not proved by the testimony of one credible witness other than the plaintiff and other corroborating circumstances. The district court further concluded that there was no reciprocity of agreement between plaintiff and decedent as to the amount of compensation plaintiff was to receive because of either mutual or unilateral error and, therefore, there was no contract or agreement as to compensation. The court further found that there was a substantial disparity between the amount decedent paid plaintiff over the five and one-half year period and the value of the services rendered by plaintiff, determined primarily by the amount plaintiff could have earned under standard lease broker rates. Under principles of unjust enrichment or quantum meruit derived from LSA-C.C. Art. 1965, the court awarded plaintiff $22,174.63 calculated on the basis of a formula which took into consideration the number of days the court determined that plaintiff worked for decedent, the standard daily rate of pay for lease brokers during the period involved, and the amount plaintiff was paid by decedent and other companies for whom he did work during the period.
From a judgment in favor of plaintiff against the defendant for that amount, both plaintiff and defendant appealed. On appeal, plaintiff specifies that the court erred: (1) in holding plaintiff failed to prove the joint venture agreement; (2) in holding plaintiff's proof did not meet the requirements of LSA-R.S. 13:3721 and 3722; (3) in finding there was no reciprocity of agreement as to the compensation to be received by plaintiff; and (4) in calculating the amount due under the doctrine of unjust enrichment. Defendant specifies that the court erred: (1) in granting recovery where plaintiff failed to prove his claim by a preponderance of the evidence and in accordance with LSA-R.S. 13:3721 and 3722; and (2) in calculating the amount of the award by a formula which is illogical, unsupported by the evidence, and is arithmetically incorrect.
Facts
Plaintiff is an experienced lease broker or landman with particular expertise in an area including DeSoto Parish and surrounding parishes. Nabors was a very successful independent oil and gas operator with extensive leases and production in the same area. In July 1972 plaintiff went to work for Nabors as a lease broker or landman, acquiring leases and doing related work over a four-parish area. According to plaintiff, their agreement was for Nabors to pay him $1,000 per month with plaintiff to pay his own expenses and upon completion of the venture to acquire and sell a large block of leases, plaintiff was to receive "down the middle and across the board" overriding royalties to be reserved by Nabors. After a six-month trial period the monthly amount was increased to $2,000. During the five and one-half year period, plaintiff also did some lease acquisition work for Phillips Petroleum Company, with whom Nabors had an agreement for the drilling of deep wells, and other companies.
*964 In August 1977 Nabors sold his oil and gas business including leases, production (mostly shallow), and oil rigs and equipment, to Sun Oil Company for $30,000,000, reserving no royalties or overrides except his landowner's royalty on producing lands owned by him in fee and an overriding royalty and carried working interest in the Phillips lease block on which there were two producing wells at the time of the sale. Plaintiff testified this sale was the successful termination of their joint venture and that Nabors was to settle with him after he determined his 1977 tax situation, but Nabors died before making the settlement. The recovery sought by plaintiff was the appraised value of a 1/32 overriding royalty under the leases assembled by Nabors during the five and one-half year period, most of which leases were acquired by plaintiff for Nabors. During the period, some 800 to 1,000 leases were acquired covering some 115,000 acres.
Nabors' secretary and the defendant executor, who was vice president and geologist for Nabors' company, testified they had no knowledge of the joint venture agreement and that it was their understanding that plaintiff was to receive $1,000 per month during the trial period and $2,000 per month thereafter as full compensation for his services. It was firmly established that a joint venture arrangement such as described by plaintiff would have been entirely inconsistent with Nabors' long-standing policy of never having partners or entering into such joint ventures with anyone. Although the executor sat in on all of Nabors' negotiations with Phillips and with Sun, was kept advised of all of Nabors' oil and gas dealings, and had Nabors' power of attorney, Nabors had never mentioned anything to him about plaintiff having any interest in or entitlement to the leases or royalty.
After plaintiff started working for Nabors in July 1972, he received regular $1,000 payments for the balance of 1972 except for a $2,500 payment in December. In 1973 he was paid $2,000 in each of the 12 months of the year. The $2,000 per month payments continued regularly for the first four months of 1974. Thereafter, payments by Nabors to plaintiff were made irregularly. The next $2,000 payment was made in December 1974. In 1975 plaintiff received three $2,000 payments, one each in April, August, and December. In 1976 there were five $2,000 payments, one in May, one in August, one in October, and two in December. In 1977 plaintiff received three $2,000 payments, one each in March, April, and June, and a $5,000 payment in December, a week or two before Nabors' death. The checks for the payments were marked mostly "on account" with the final payment being marked "For professional services rendered." The total paid by Nabors to plaintiff over the five and one-half year period was $67,500.
During the five and one-half year period, plaintiff worked for and billed other companies, primarily Phillips, and, in 1977, Sun. In 1972 and 1973 income received by plaintiff from other companies was nominal. In 1974 plaintiff was paid over $30,000 by Phillips and others. In 1975 he received over $24,000, in 1976 over $19,000, and in 1977 over $42,000. These figures included expenses and totaled over $115,000 during the five and one-half year period. Plaintiff's testimony was that the work he did for other companies was related to Nabors' interests and the payments he received from them was in lieu of or lagniappe to the payments he received from Nabors.
It was established by plaintiff's testimony and by the testimony of others, including the defendant executor, Nabors' secretary, plaintiff's brother who is clerk of court in DeSoto Parish, and by the documented huge volume of leases acquired by plaintiff for Nabors that plaintiff worked hard and long hours and rendered substantial and extensive services to Nabors over the period involved. Plaintiff had no records, however, of the precise days he worked for Nabors or of his precise expenses attributable to work for Nabors.
The Alleged Joint Venture Agreement
Plaintiff sought to establish that Nabors had agreed to assign to him at the successful *965 conclusion of the joint venture overriding royalties under leases acquired by Nabors during the period plaintiff worked for him. Since the leases were included in the sale by Nabors of his entire oil and gas properties to Sun, without reservation of overriding royalty except to a limited extent in the Phillips block, plaintiff sought to recover the value of the overriding royalty he claims was due him under the agreement. The only evidence of the alleged agreement was plaintiff's own testimony about his oral, private conversations with the decedent.
The trial court correctly held that parol evidence of the joint venture agreement to convey overriding mineral lease royalties was inadmissible. An overriding royalty under an oil and gas lease is an incorporeal immovable. LSA-C.C. Art. 2275[1] requires that every transfer of immovable property be in writing. The requirement that transfers of immovables be in writing also applies to actions for an accounting of profits realized from a joint venture involving mineral leases. Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963). Parol evidence, plaintiff's testimony, was not admissible to prove the joint venture agreement either in support of his claim to such a royalty interest or the value thereof. Plaintiff's testimony being the only evidence of such an agreement, it obviously follows that the agreement was not proved.
The trial court also correctly held that plaintiff's proof did not meet the requirements of the Dead Man Statute, LSA-R.S. 13:3721 and 3722.[2] Plaintiff met the requirement of Section 3721 in that he did file a claim against the succession representative within one year of the death of the deceased. He did not, however, meet the requirements of Section 3722. Plaintiff failed to offer the testimony of any witness other than himself as to the alleged agreement, nor did he establish other corroborating circumstances.
Agreement as to Compensation
The trial court found there was no reciprocity of agreement or meeting of the minds between plaintiff and Nabors as to the compensation plaintiff was to receive for his services. There was no agreement by Nabors to assign to plaintiff an overriding royalty as contended by plaintiff. There was no mutual agreement or at least no agreement by plaintiff to accept the irregular monthly payments of $1,000 and later $2,000 as full compensation. This latter finding is supported by the irregular and sporadic nature of the payments which do not seem to relate to the specific amount of time worked by plaintiff for Nabors or *966 for other companies during the periods preceding the making of such payments. Plaintiff testified he would tell Nabors when he was short of money and Nabors would make a payment to him, "on account."
The trial court determined that there was no agreement between plaintiff and Nabors as to the amount of compensation plaintiff would receive for services rendered. We find no error in this determination. It is clear that plaintiff and Nabors entered into a binding contract by which plaintiff was to render services and was to be paid some unspecified compensation in return. As noted above, there was no agreement by plaintiff to accept the irregular payments made by Nabors as full compensation for the extensive services he performed in Nabors' behalf.
Right to Recovery
Because there was no agreement as to the amount of compensation plaintiff was to receive, the trial court allowed plaintiff to recover under the doctrine of unjust enrichment. The conditions or prerequisites necessary to application of that doctrine are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) an absence of another remedy at law. Edmonston v. A-Second Mortgage Company of Slidell, Inc., 289 So.2d 116 (La. 1974); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). For a discussion and explanation of each of these prerequisites see: Nicholas, Unjustified Enrichment in the Civil Law and Louisiana Law, Part I, 36 Tul.L.Rev. 605 (1962), Part II, 37 Tul.L.Rev. 49 (1963).
The trial court was correct in finding that plaintiff established the conditions for recovery under unjust enrichment, except perhaps the fifth condition, an absence of another remedy at law. In theory it is perhaps more accurate to classify plaintiff's action as one in contract, with plaintiff's remedy at law being enforcement of the contract including the implied provision thereof that plaintiff be reasonably compensated for his services. See: Comment, Quantum Meruit in Louisiana, 50 Tul.L.Rev. 631 (1976).
Plaintiff established the existence of a contract between Nabors and himself. The fact that the amount of compensation plaintiff was to receive for his services was not agreed upon does not vitiate the contract. LSA-C.C. Art. 1779 sets forth the requisites for a valid contract: (1) parties legally capable of contracting; (2) their consent legally given; (3) a certain object, which forms the matter of agreement; and (4) a lawful purpose. See also LSA-C.C. Art. 1761. All of these requisites were met in this case. The object of this contract was for plaintiff to supply services to Nabors; no agreement was reached as to the remuneration plaintiff would receive for these services.
LSA-C.C. Art. 1903 states:
"The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect."
An implied provision of plaintiff's contract was that he would be paid a reasonable sum for his services. Therefore, plaintiff's remedy at law is to sue on the contract and have the court determine the remuneration he should receive for the services he rendered to decedent under the codal rules regarding interpretation of agreements. Plaintiff's claim for compensation should be considered under traditional theories of contract interpretation where a missing but implied term of the contract must be supplied by the court.
Where there is a contract for the rendering of services but there is no agreement for the price or compensation, the plaintiff is entitled to be paid for the services rendered under the principles of LSA-C.C. *967 Art. 1965.[3]Bascle v. Perez, 224 La. 1014, 71 So.2d 551 (1954); Doll v. Albert Weiblen Marble & Granite Co., Inc., 207 La. 769, 22 So.2d 59 (1945); Skains v. White, 391 So.2d 1327 (La.App. 2d Cir. 1980); Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (La.App. 2d Cir. 1975); North Development Company, Inc. v. McClure, 276 So.2d 395 (La.App. 2d Cir. 1973); Swan v. Beaubouef, 206 So.2d 315 (La.App. 4th Cir. 1968).[4] The amount of recovery is the value of the services which has inured to the benefit of another. In making a determination of what is a reasonable value of the services rendered, the court must look to the circumstances involved in each individual case. North Development Company, Inc. v. McClure, supra. Plaintiff's claim against decedent's estate must meet the requirements of the Dead Man Statute, that is, the debt or liability must be proved by a credible witness other than the plaintiff and other corroborating circumstances.
As previously noted, it was firmly established by the applicable standard of proof that plaintiff rendered substantial, extensive services to Nabors over a five and one-half year period in acquiring hundreds of leases covering over a hundred thousand acres. Although the exact number of days and hours plaintiff worked for Nabors was not established, a careful analysis of all the evidence supports a finding that the $67,500 paid by Nabors to plaintiff was substantially less than the value of the services determined on the basis of the usual daily rates plus expenses customarily paid to lease brokers for similar work. The evidence establishes the customary manner of compensating independent landmen is on a daily rate plus expenses basis. The prevailing rates during the years in question were established. Although there was testimony that on occasion landmen are compensated by an overriding royalty or on a per acre leased basis, the evidence does not establish that these methods of compensation are usual and customary in the industry.
The exact amount of recovery to which plaintiff is entitled is difficult to determine. The precise formula employed by the trial court is subject to criticism from both sides. For example, plaintiff argues that amounts paid plaintiff by other companies should not have been deducted from rates due plaintiff for days worked for Nabors. Plaintiff also complains about the trial court's exclusion of expenses which the trial court found were not established with a sufficient degree of certainty. Defendant attacks the trial court's method of arriving at days worked for Nabors and points up a mathematical error. However, the trial court was correct in looking to the custom in the industry to determine the amount of compensation plaintiff is to receive. LSA-C.C. Art. 1966.
Where there is a legal right of recovery but the amount cannot be determined precisely, the court has reasonable discretion to assess an amount based upon all the facts and circumstances. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). After analyzing the evidence and approaching the measure of plaintiff's recovery through several different formulas and from several different angles, we find the amount awarded by the district court is within the middle range of *968 the several approaches. The amount awarded fairly compensates plaintiff for the difference between the value of the services rendered and expenses advanced for Nabors and the amount plaintiff was actually paid.
Decree
For the reasons assigned, the judgment of the district court is affirmed. Costs of the appeal are assessed one-half to plaintiff and one-half to defendant.
Affirmed.
NOTES
[1] "Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold."
[2] LSA-R.S. 13:3721:

"Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
"(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
"(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
"(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
"(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
"The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder."
LSA-R.S. 13:3722:
"When parol evidence is admissible under the provisions of R.S. 13:3721 the debt or liability of the deceased must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances."
[3] "Art. 1965. The equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
[4] The cited cases all refer to principles of "quantum meruit". Oil Purchasers, Inc. v. Kuehling, 334 So.2d 420 (La.1976) criticized "quantum meruit" as an ill-considered importation from the common law and classified a claim in that suit for reduction of a fee stipulated in an employment contract as "actio de in rem verso", recognized in Minyard and Edmonston, supra. The cited cases use "quantum meruit" as a descriptive term only, descriptive of the equitable principles of contract interpretation enunciated in LSA-C.C. Arts. 1965 and 1903, which were the substantive law bases for the decisions in those cases.