459 So.2d 111 (1984)
John P. HARRINGTON, Jr., Plaintiff-Appellant,
v.
Juanita Keith Beasley OLIVER, Defendant-Appellee.
No. 16539-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Writ Denied December 14, 1984.
*112 Touchstone & Wilson, Ltd. by David M. Touchstone, Shreveport, for plaintiff-appellant.
Love, Rigby, Dehan, Love & McDaniel by J. Philip Goode, Jr., Shreveport, for defendant-appellee.
Peatross & Greer by L. Edwin Greer, Shreveport, for third-party defendant-appellee.
Before JASPER E. JONES, SEXTON and NORRIS, JJ.
JASPER E. JONES, Judge.
The plaintiff, John P. Harrington, Jr. appeals a judgment awarding him $2,100.00 for services he rendered performing a verbal contract made between himself and defendant's former husband, in his capacity as agent for defendant, to renovate three houses owned by defendant as her separate property. Plaintiff contends the quantum awarded is inadequate. The defendant, Juanita Beasley Oliver, answered the appeal contending plaintiff was entitled to no award and in the alternative that the award is excessive.[1] We reverse.
Defendant married Leonard Oliver on March 16, 1979. She had a substantial amount of separate property. After the marriage she executed a power of attorney giving Oliver, an accountant, virtually unlimited power to manage her separate property. Oliver established J and L Investments with her money and for her separate estate.
Oliver, on behalf of J and L Investments, entered into a verbal agreement with plaintiff to renovate houses to be purchased by the defendant in the Highland area of Shreveport. Oliver participated in the project to obtain tax advantages for the defendant and in anticipation of future profits. The terms of the agreement provided that all the money for the project was to be supplied by J and L Investments. Plaintiff agreed to act as the general contractor for the project. His duties consisted of locating the houses, negotiating for their purchase, drawing floor plans showing the work to be done, taking bids from sub-contractors and supervising the work. The contract provided plaintiff was to receive for his services one-half the profits from the sale of the houses and in the event the houses were leased instead of sold, one-half the profits from the rentals after the cost of the houses and renovation expenses were recovered.
At the time he entered the agreement plaintiff was working for the American Cancer Society. His take home pay was approximately $700.00 per month. He left his job with the Cancer Society August 31, 1979.
Three houses located at 627 Egan, 633 Egan and 641 Stoner were purchased pursuant to the agreement. Plaintiff negotiated their purchase. The two houses on Egan were purchased together. The closing date for their purchase was August 14, 1979. The closing date for the house at 641 Stoner was August 27, 1979.
Plaintiff's first offer for purchase of one of the houses was submitted at the end of June, 1979 and he went to work immediately thereafter drawing up floor plans for the desired renovation work. He eventually drew up a complete set of floor plans for all three of the houses.
After completing the floor plans plaintiff had the houses leveled, cleaned and prepared for the renovation work. He also began obtaining bids for the desired work. By *113 the end of November most of the clean up and preparatory work was complete and a number of bids were in. Plaintiff's services were terminated at about this time and a general contractor was hired to finish the project.
Plaintiff contends he was discharged as general contractor by the defendant and locked out of the houses upon which he was working. Defendant contends plaintiff abandoned the work. Plaintiff filed suit on November 18, 1980 seeking to recover the value of the services he performed during the existence of the agreement on the basis of quantum meruit. He also prayed for damages for mental anguish and lost profits. The trial court found defendant terminated the plaintiff and the plaintiff abandoned the project and for these reasons each of the parties had breached the contract. The trial court awarded plaintiff judgment for $2,100.00 for services rendered for the three months of September, October and November, based upon $700.00 per month for his services. Plaintiff's other demands were rejected.
At trial it was established that on August 6, 1979 Oliver issued plaintiff a check from J and L Investments for $4,761.80. Oliver listed the payment on his books as a renovation expense. Defendant sought a credit for the amount of the check against any sums she was found to owe plaintiff. The trial court refused to allow defendant a credit for any amount.
The issues raised by plaintiff's appeal and defendant's answer to the appeal are:
(1) Whether the trial judge correctly found that plaintiff was entitled to recover $2,100.00; and
(2) Whether defendant is entitled to a credit against any award rendered in favor of the plaintiff for the $4,761.80 payment to plaintiff.
Issue # 1
Plaintiff testified that the defendant called him on the phone and terminated his connection with the renovation project. He testified the defendant changed the locks on the three houses and he could not get inside of them to pursue his work. The defendant denied that she called the plaintiff and terminated him. The record reflects that defendant was hospitalized several times for alcoholism during the time frame when the plaintiff testified he received her phone call. Oliver admitted that he changed the locks on the doors of the houses which corroborated the plaintiff's testimony on this fact. Considering these circumstances the trial judge's credibility call accepting plaintiff's testimony and rejecting defendant's testimony and concluding defendant breached the contract is supported by substantial evidence. This factual determination is not manifestly erroneous and cannot be disturbed on appeal. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Oliver testified he tried unsuccessfully to locate the plaintiff to encourage him to pursue the contract. The trial judge accepted this testimony and based upon it concluded the plaintiff also breached the contract by abandoning the work. The plaintiff's unavailability after he received his termination from the defendant and was locked out of the houses by the change of locks does not constitute a breach of contract by him. The contractual relationship between the plaintiff and defendant had been earlier severed by the defendant and the trial court's determination that the plaintiff breached the contract is clearly wrong. See Guidry & Swayne v. Miller, 217 La. 935, 47 So.2d 721 (1950) which held that a contractor did not breach a building contract by discontinuing work where the owner refused to pay a progress installment due under the contract, locked the tool house at the project and placed no trespassing signs on the property.
The owner of a construction project has the right to terminate a construction contract even though work has commenced upon the project by "paying for the expense and labor already incurred, and such damages as the nature of the case may require." LSA-C.C. art. 2765. The damages *114 which a contractor is entitled to receive in excess of his labor and material cost expended at the time the proprietor terminates the contract are the profits which he would have made had he been permitted to complete the contract. He is to be placed in the same position he would have occupied if he had completed the contract. Forrest and Crocker v. Caldwell and Hickey, 5 La.Ann. 220 (La.1850); Dugue v. Levy, 114 La. 21, 37 So. 995 (1904); Guidry & Swayne v. Miller, supra. Tom Black & Associates v. Thibaut Const. Co., 420 So.2d 1150 (La.App. 5th Cir.1982).
The contractor is required to prove his loss of profits with certainty. The proof must not be speculative. Guidry & Swayne v. Miller, supra, Housecraft Division of Southern Siding Co. v. Jones, 120 So.2d 662 (La.App.Orleans 1960).
The house on Stoner was cleaned and leveled but no other renovation work was done upon it. This house was sold on May 23, 1980 at a loss of $1,029.29.
The two houses on Egan were completely renovated at a total cost to defendant, including the price of the houses, of approximately $190,000.00. These houses are currently leased out as multi-unit apartments and provide a total monthly rental income of from $1,200.00 to $1,500.00 per month. The record contains no indication of annual ad valorem taxes, insurance and maintenance cost on these rental units. Assuming the houses continue to be leased at the same rent it will be more than ten years before the rent income will return to the defendant her initial cost and renovation expense. A substantial additional rental period must then elapse for the defendant to recover the sums she has expended for taxes, insurance and maintenance. Only after defendant has fully recovered all sums expended will there be profits, one-half of which plaintiff would be entitled to under the contract. The plaintiff produced no evidence to establish the number of years these renovated houses would remain in adequate condition to serve as rental units. The plaintiff did not establish the market value of these houses following their renovation.
The plaintiff has failed to establish what profits he would have earned if he had been permitted to complete the contract. Plaintiff attempted to establish his damages on the theory of quantum meruit. He offered evidence to establish the salary that a general contractor would have included within a renovation bid for his compensation, the profits that a contractor would have made upon the remodeling project and the fee which an experienced draftsman would have charged to prepare the plans.
The plaintiff is not entitled to recover in this case based upon quantum meruit because he had a contract which he had a legal right to enforce. One of the prerequisites to the application of the quantum meruit doctrine is that the plaintiff must have no other remedy available to him at law. Creely v. Leisure Living, Inc., 437 So.2d 816 (La.1983); Porter v. Johnson, 408 So.2d 961 (La.App.2d Cir.1981). The plaintiff's remedy was to have established what profits could have been made from the sale of the renovated houses, or what profits he could have reasonably anticipated receiving from the lease of these houses. This he failed to do. Under the contract the sole compensation to which he was entitled for the services which he was to perform for acting in the capacity as a general contractor on the renovation project was one-half of any profits made from the project. He was not entitled under the contract to receive any additional compensation or payment for the services rendered by him in connection with the renovation project.
The trial judge's award to the plaintiff of $2,100.00 for the three months work for the months of September, October and November was not provided for nor contemplated in the contract and the plaintiff was not entitled to this award.
Because we have concluded plaintiff did not establish that he was entitled to any recovery under the contract, we find it *115 unnecessary to consider the defendant's argument of set-off based upon the payment by Oliver to the plaintiff of $4,761.80.
The judgment appealed is REVERSED AND SET ASIDE. The suit is dismissed at plaintiff's cost.
NOTES
[1] Defendant filed a third party demand against her former husband which was rejected by the trial court. On appeal she does not assign as error this aspect of the judgment rejecting her third party demand against Oliver.