519 So.2d 384 (1988)
Shelva Maria FUSSELL, Plaintiff-Appellant,
v.
LOUISIANA BUSINESS COLLEGE OF MONROE, INC., Defendant-Appellee.
No. 19309-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1988.
*385 North Louisiana Legal Assistance Corp. by Lillian Dunlap, Monroe, for plaintiff-appellant.
McLeod, Swearingen, Verlander, Dollar, Price & Noah by Elmer G. Noah, II, Monroe, for defendant-appellee.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
MARVIN, Judge.
In this action for breach of contract, plaintiff, Ms. Fussell, appeals a judgment rejecting her demands on the finding that the defendant business college was justified in suspending her from its business college.
In an earlier review, Fussell v. Louisiana Bus. College of Monroe, 478 So.2d 652 (La.App. 2d Cir.1985), we held that plaintiff
made a prima facie case of breach of contract by the defendant by showing that her status as a student at the school was terminated [and that] it was ... incumbent upon the defendant to show by competent evidence that the breach was that of plaintiff, rather than its own, and to show that the plaintiff's dismissal was justified. 478 So.2d 652, 655.
We remanded for that purpose.
The issue in this appeal is whether the defendant met its burden of proving on remand that its suspension of plaintiff was justified. On remand the trial court held that
if the defendant breached its contract to give plaintiff a course of study by suspending her, it was because [plaintiff] had breached her contractual responsibilities to conduct herself as a responsible adult by creating and/or exacerbating the turmoil which could not be tolerated in academic surroundings.
The record does not support the trial court's conclusion. Defendant did not prove plaintiff disrupted the scholastic program of the college.
We reverse and render judgment for plaintiff.

FACTS
On February 7, 1983, defendant contracted under an "enrollment contract" to train plaintiff for a position as a legal secretary for $3,600 in tuition. Within four months, *386 on May 26, 1983, plaintiff was suspended for being a "disruptive influence." The college refused to readmit plaintiff unless she signed a document admitting she had been a disruptive influence, agreeing to a future suspension if she again became a disruptive influence, and agreeing that the evaluation of her future conduct was to be left to the sole discretion of the school administrator. Plaintiff refused to sign the statement and instead brought this action.
The evidence at the first hearing and on remand shows that many students and teachers at the college in May 1983 became discontented with the administration. The husband of one of the teachers prepared a petition addressed to the district attorney, which was signed by 21 students, including plaintiff. The petition reflected the concern of some students and teachers that the school's administration was overcharging students and misappropriating government loans and grants that had been assigned by students to the college. A newspaper article on May 18, 1983, outlined these complaints. The article also contained allegations that some instructors were unqualified, that the school had a poor job placement record, and that an admissions policy to boost enrollment allowed unqualified students to enter the school. Many students left the school because of discontent and enrollment declined.
Two former teachers at the school and a former student testified at plaintiff's request. Ms. Hicks, the former student, testified that she had suggested the petition. Hicks was suspended but was readmitted when she signed the document that plaintiff was requested to sign to gain readmission. Ms. Hicks later graduated. No other students were suspended.
The two ex-teachers, one of whom voluntarily quit and the other of whom was terminated in May 1983, testified that plaintiff was an excellent student with a 3.57 GPA and that she was not at all disruptive. Both ex-teachers said that other students often complained about the school administration.
The trial court initially concluded that plaintiff's admissions at the first hearing (that she had signed the petition and had complained to others) were sufficient to establish the school's burden of proving that plaintiff was a disruptive influence. We disagreed and remanded to require the school to prove its justification.
On remand, several members of the school's administration and one former student testified at the request of the school. The former student, Ms. Zaunbrecker, had presented a hand-written complaint about plaintiff to the school's administration in May 1983 which the school used as its primary justification for suspending plaintiff. This "complaint" reads somewhat ambiguously as follows:
Maria Fussell and Patti Hicks are asking Bruce Easterling about his GED and when he will be finishing his courses. And that he better past (sic) retake courses because the school will charge them for extras after graduating time is up for his course.
I feel that they are putting doubts in other student's minds.
 s/ Debora Zaunbrecker
 5/26/83
Ms. Zaunbrecker did not state that the "complaint" disrupted her, any other student, or any classroom of students.
The school administrators were repeatedly asked, on both direct and cross-examination, to specify the behavior of plaintiff which led to her suspension. Ms. Evans, the academic dean and administrator, was unable to provide specific information:
Q. Specifically what made you decide to suspend these two students?
A. There had to be an endthere had to be an end to what was going on.... once it becomes obvious that someone is undermining your goals, then you just have to take some steps to eliminate that ...
Ms. Schultz, the president and owner of the school, also did not specifically detail how plaintiff had been disruptive:
Q. Do you know the reason for their suspension?
*387 A. ... they were instigating unrest in our student body and stopping my staff from doing their job ...

THE DEFENDANT-COLLEGE'S BURDEN OF PROOF
The remand hearing produced little specific information to support the school's conclusion or contention that plaintiff was disruptive.
The conversation between plaintiff and Bruce Easterling, as described by Ms. Zaunbrecker, did not occur during a study or classroom session and cannot be characterized as disruptive conversation. It was established that plaintiff, on one occasion, briefly allowed a tape recorder to play in a classroom. The recording was described as being a transcription of an earlier meeting between some of the discontented students and school officials. Plaintiff and another witness testified that the tape was only accidentally turned on and was then immediately turned off. The teacher of that class testified, however, that the incident did not disrupt her or the class.
No teacher was called by the college to testify. The only teachers, the two called by plaintiff, stated that plaintiff was an excellent student who did not disrupt class. Defendant's contentions that plaintiff was "putting doubts in other students' minds" and "instigating unrest" related mainly to fiscal policies of the administration. Grumbling by college students must be of a greater degree than is shown here to reach the status of being legally disruptive of the scholastic program.
The defendant failed to meet the burden of proof we required in our first review of this case. Fussell v. Louisiana Bus. College of Monroe, supra. We must conclude that the trial court's finding that plaintiff's suspension was justified is clearly wrong.
The school administration obviously lost the trust and confidence of some of its students and teachers even before plaintiff enrolled in February before she was suspended in May. The fact that no teacher or student testified about any classroom or study disruption by plaintiff is particularly significant. Plaintiff is shown to have attended classes, behaved herself in the general sense, and made excellent grades. The fact that plaintiff casually voiced suspicions, whether or not unfounded, that she and others had about the administration to a newspaper reporter and to other students was not a breach of plaintiff's obligation to avoid disruptive behavior to the scholastic program. We cannot agree that plaintiff's behavior justified her suspension.

DAMAGES
Plaintiff sought damages for monetary loss, the delay of her education, and mental anguish. Courts of appeal may award damages where the trier of fact erroneously fails to do so, and where the record contains sufficient proof of damages. Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2d Cir.1983), writ denied, 445 So.2d 1233 (La.1984); Great Am. Surplus Lines Ins. Co. v. Bass, 486 So.2d 789 (La.App. 1st Cir.), writ denied, 489 So.2d 245 (La.1986).
Damages for the breach of a contract are designed to put the plaintiff in the position she would have been in had the defendant not breached the contract. C.C. Art. 1995; Hemenway Co., Inc. v. Bartex, Inc. of Texas, 373 So.2d 1356 (La.App. 1st Cir.), writ denied, 376 So.2d 1272 (La.1979).
The defendant itemized the plaintiff's account as follows:

70 percent of $3,600 tuition $2,520.00
Enrollment fee 50.00
Books 449.93
 _________
Total amount of debt $3,019.93
 Less guaranteed student loan payment (1,187.50)
 Less federal grant (Pell grant) (900.00)
 ________
Total amount paid by plaintiff $2,087.50
Amount owed $932.43

The college apparently contends that plaintiff owed 70 percent of the tuition under the withdrawal provision of the enrollment contract:
I understand that withdrawal after the commencement of classes, the refund policy shall be: * * *
4. During the second 25% of the course the college will retain 70% of *388 the stated course price. (Emphasis added.)
This provision does not provide for involuntary and unjustified suspensions. Plaintiff contracted for about a year's course of instruction that would prepare her for employment as a legal secretary. Despite the fact that plaintiff successfully completed about four months of the course, defendant did not prepare plaintiff to qualify for a position as a legal secretary. Plaintiff received no academic credits and nothing of scholastic value. See C.C. Art. 2018. Accordingly, the defendant is liable to return the $2,087.50 it received for plaintiff's tuition. See First Free Mission Baptist Church v. Randle, 119 So.2d 178 (La. App. 1st Cir.1960); C.C. Art. 2013.
Plaintiff's secretarial training and prospects for employment were delayed by the defendant's breach. Although the precise monetary loss brought about by this delay cannot be calculated, plaintiff is nevertheless entitled to compensation.
Where there is a legal right of recovery but the amount cannot be determined precisely, the court has reasonable discretion to assess an amount based upon all the facts and circumstances. Porter v. Johnson, 408 So.2d 961 at 967 (La. App. 2d Cir.1981), writ denied [412 So.2d 99 (La.1982) ]. See also Wright v. Superior Oil Company, 138 So.2d 688 (La. App. 3d Cir.1962), cert. denied; C.C. Art. 1999.
Ms. Throckmorton, an employee of the state job placement office and an expert in vocational job placement, testified that a beginning legal secretary with the one year of training that plaintiff contracted for could expect to earn between $600 and $750 per month. Plaintiff enrolled at Northeast Louisiana University in January 1984, about eight months after she was suspended by defendant. The delay attributable to defendant is the four months plaintiff was enrolled in defendant's college. Exercising our discretion, we shall award plaintiff $1,500 general damages.
Even if plaintiff proved mental anguish damages, which we find she did not, these damages can be awarded only in limited circumstances. Defendant's obligation to provide vocational training was not intended to "gratify a nonpecuniary interest." C.C. Art. 1998.

DECREE
The judgment of the trial court is reversed and there is judgment against defendant-college and in favor of plaintiff for $2,087.60 in tuition and for $1,500 in damages, with legal interest from the date of defendant's active breach of the contract (May 26, 1983).[1] All costs are assessed to defendant.
REVERSED AND RENDERED.
NOTES
[1] Damages for delay in the performance of an obligation are owed from the time the obligor is put in default.

Other damages are owed from the time the obligor has failed to perform. (Our emphasis.) C.C. Art. 1989.
Interest is awarded. See Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App.2d Cir. 1987).