522 So.2d 1323 (1988)
Denise Gale DAUGHERTY, Plaintiff-Appellant,
v.
CASUALTY RECIPROCAL EXCHANGE INSURANCE COMPANY, et al, Defendants-Appellees.
No. 19364-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
Rogers and White by David L. White, Bossier City, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendants-appellees.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Judge.
The assumption of risk defense does not totally bar recovery by a plaintiff-guest passenger who, jointly with her driver, was using various drugs for several hours before and during a 300-mile automobile trip on which the driver negligently lost control of the car which crashed off the highway *1324 when both the driver and the passenger were "high" on drugs. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).
We reverse the trial court judgment, based on a jury verdict, that rejected the passenger's demands.
We find the passenger was equally at fault with the driver because each was obviously high from their joint participation in drug use over several hours and because the driver, at a stop within an hour of the accident, told the passenger she was very tired and wanted the passenger to drive the car to their destination. Gravois v. Succession of Trauth, 498 So.2d 140 (La.App. 5th Cir.1986), writ denied 500 So.2d 422 (La. 1987); Townley v. Manuel, 509 So.2d 515 (La.App. 3d Cir.1987).
Accordingly and applying La.C.C. Art. 2323, we award personal injury damages to the passenger.

FACTS
The passenger, Denise Daugherty, and her driver, Linda Woolum, each about 24 years old, shared an apartment and worked as waitresses in a cocktail lounge in Shreveport. A male friend who was an attorney allowed them the use of the apartment and loaned his sports car to them. According to the driver, she and her passenger were both high on cocaine at the apartment when they left on the trip about 3:30-4:00 a.m., intending to spend the Memorial Day weekend in Galveston. The passenger knew that the driver had worked the 6:00 p.m. to 2:00 a.m. shift immediately before their departure and had not slept "in days." Their purses contained cocaine and marijuana which they procured and planned to use on the trip and the weekend. They shared several joints of marijuana while traveling and stopped two or three times to sniff cocaine.
At the last stop before the accident the driver remarked that she was tired and asked plaintiff to drive the car. Plaintiff declined, explaining that she did not know how to drive the sports car with a manual shift.
The accident occurred about four or five hours from Shreveport after daylight when the driver went to sleep and the car left the road in San Jacinto County, Texas. Plaintiff's screams awakened the driver when the car left the road, thereafter rolling over one or more times, seriously injuring its occupants, especially plaintiff.
The jury obviously gave no credence to plaintiff's version that neither she nor her driver were using drugs at any time and that she went to sleep shortly after they left Shreveport and waked up only twice, the last time being when the car left the roadway. Plaintiff's general credibility and her specific denial of habitual drug use during the months before the accident was demonstrably impeached before the jury.
Plaintiff sustained compound fractures of the left wrist and forearm and underwent eight surgical reduction procedures and bone and skin grafts. She was hospitalized 24 days and incurred $29,469 in medical and related expenses. Plaintiff seeks $70,000 general damages and lost wages for the year that she contends she was unable to work.

QUANTUM
Courts of appeal may award damages where the trier of fact erroneously fails to do so, and where the record contains sufficient proof of damages. Fussell v. Louisiana Bus. College of Monroe, 519 So.2d 384 (La.App. 2d Cir.1988).
Plaintiff's injury was characterized as severe by the several orthopedic surgeons which treated her. Her compound fracture was "grade three," the most severe classification. Among the eight surgical procedures plaintiff underwent were operations to remove dead tendons and tissue, multiple skin grafts, the application of a Hoffman device (a type of metal brace designed to hold fractured bones together), and an open reduction internal fixation procedure to straighten the bones and fix them in place with metal plates and pins. The bone and skin grafts required the removal of bone and skin from "donor sites" on the plaintiff's body. The donor sites are extremely painful for about a week.
*1325 During her recovery, plaintiff at one time had only 25 percent normal motion in her wrist. One orthopedic surgeon said he then believed a "great deal of future disability" was inevitable. By the time plaintiff was released from care, however, and over two years after the accident, plaintiff's recovery and rehabilitation left her with very little, if any, permanent residual effect.
The only evidence that reflects plaintiff's condition when she was released from care is the deposition of Dr. Haynie, an orthopedic surgeon. He said:
When we released her she was not having any pain in her arm or her hand. She had a nearoh, she had a very functional range of motion. It was not completely normal like her other side but the range of motion that she had I would say would not cause her any disability.
Q. ... In your opinion, Ms. Daugherty has no functional disability of her left hand?
A. Correct.
Q. And in your opinion she has a good hand now?
A. Yes, she haswhen you say no functional disability, if it was my hand I could operate with it, I could play baseball with it, I could go fishing with it, I could do things and it wouldn't take any adjustment. But it's never going to look like her other hand when it moves because it won't be able to move as far as her other hand in a few directions which I don't consider significant.
Dr. Haynie also stated that the left hand of this right-handed plaintiff was significantly impaired for a period of about a year to 18 months during her recovery. This conclusion supports plaintiff's contention that she was unable to work as a waitress and bartender for about a year following the accident. Plaintiff made about $190 a week in wages and tips before the accident.
Plaintiff experienced much pain as a result of her injuries and the many surgical procedures she underwent for two years. No medical expert, however, assigned any significant permanent disability.
In support of her demand for $70,000 general damages, plaintiff cites several cases, all of which involve permanent disability and future pain and suffering. See e.g., Lewis v. Exxon Corp, 451 So.2d 24 (La.App. 1st Cir.1984), where the left-handed plaintiff suffered a compound fracture of the left humerus and was permanently disabled to the extent that he could not resume his occupation as a welder. He was awarded $80,000 by the court of appeal for his past and future pain and suffering. See also Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La. App. 2d Cir.1984), where plaintiff suffered a 27 percent disability of the right arm, was hindered in his occupation, and had to abandon his 30-year avocation of repairing and building clocks. Morgan was awarded $50,000 in general damages.
Compare, on the other hand, the award in Derouen v. City of New Iberia, 415 So.2d 596 (La.App. 3d Cir.1982), in which the 65-year-old plaintiff fractured her left radius, underwent internal reduction surgery in which a metal plate and six screws were inserted, underwent a bone graft, was assigned a 15 percent residual disability. She was awarded $25,000 in general damages by the appellate court. See also Dobard v. Skate Country, Inc., 451 So.2d 1231 (La.App. 4th Cir.1984), where the plaintiff suffered a comminuted fracture of the ulnar bone in her left forearm, underwent realignment surgery to have a metal plate and screws installed, and was assigned a residual disability of one percent. Dobard was awarded $35,000 in general damages by the trial court.
Considering the extent of this plaintiff's injuries, temporary disability, slight permanent disability, and her age and recovery, we deem the following awards to constitute just reparation:

Past medical expenses $29,469.
Lost wages 9,880.
General damages 35,000.
 ________
Total damages: $74,349.

APPORTIONMENT OF FAULT
The factors we are to compare and consider in allocating negligence under C.C. Art. 2323 are set forth in Watson v. State *1326 Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).
1. Whether the conduct resulted from inadvertence or involved an awareness of the danger;
2. How great a risk was created by the conduct;
3. The significance of what was sought by the conduct;
4. The capacities of the actor, whether superior or inferior; and
5. Any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
469 So.2d at 974.
The plaintiff and driver were roommates and coworkers. We must conclude that each was fully aware of the other's self-destructive lifestyle. The testimony of the driver and other evidence clearly establishes that the two habitually shared drugs. According to the driver, not only was plaintiff aware of the driver's heavy drug use before and during the trip, but, as well, supplied the cocaine, helped procure the marijuana, joined with the driver in using drugs during the trip, and was acutely aware that the driver had not slept recently and was tired.
Plaintiff chose to depart on a lengthy trip at 3:30-4:00 a.m. with a driver who had just finished an eight-hour shift, who had not slept "in days," and who was under the influence of cocaine and marijuana. In this respect, the jury's implied conclusion is supported. Plaintiff was grossly negligent and utterly disregarded her own safety in the face of obvious danger.
Applying the Watson factors, we find that plaintiff was aware of the danger. The risk was great that the driver would lose control. The significance of what was sought by the two roommates was nothing more than self gratification. Plaintiff had the opportunity to control whether the fatigued and "high" driver continued behind the wheel, whether plaintiff would drive, or whether both would "rest." No extenuating circumstances are suggested to us and we find none.
Plaintiff is as culpable as the driver. Both were equally negligent. Plaintiff's damages shall therefore be reduced by one-half.

CONCLUSION
We reverse and render judgment in favor of plaintiff and against defendant-appellees for $37,174.50, with legal interest from judicial demand, and at the cost of defendant-appellees.
REVERSED AND RENDERED.