**GIBRALTAR SAVINGS, F.A. in Conservatorship with the Resolution Trust Corporation**

**v.**

**FIRST MORTGAGE CORPORATION, et al.**

Civ. A. No. 90–392–A.

United States District Court, M.D. Louisiana.

June 2, 1993.

S. Layne Lee, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for The Resolution Trust Corp. in its Capacity as Receiver for Gibraltar Sav., F.A.

John O. Shirley, Sr., Roedel, Parsons, Forrester, Hill & Koch, Baton Rouge, LA, for First Mortg. Corp. and Premier Bancorp.

Susan F. Clade, Christopher M. Guidroz, Susan Beth Kohn, Simon, Peragine, Smith & Redfearn, New Orleans, LA, for Verex Assur., Inc.

**SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**

JOHN V. PARKER, Chief Judge.

On May 5, 1993, the court rendered findings of fact and conclusions of law in favor of

plaintiff, the Resolution Trust Corporation, against defendant, Premier Bancorp, as successor to First Mortgage Corporation. Subsequently, the court received correspondence from the attorneys relating their disagreement as to the amount of damages that should be awarded in the judgment and the commencement of prejudgment interest. Having further considered the matter, the court has determined that additional findings of fact and conclusions of law are needed in order to fully resolve the issues relating to quantum.

**Supplemental Findings of Fact**

1. As previously found, First Mortgage is liable to the RTC for breach of warranty made in the Adjustable Whole Loan Sale and Servicing Agreement. In particular, First Mortgage breached its warranty that the Roberson mortgage loan was covered by valid and enforceable mortgage insurance obtained from Verex Assurance, Inc.

2. The parties specifically stipulated that the RTC need not present any evidence at trial as to damages and the issue of damages was submitted without any evidence of actual damages. The RTC now contends that the appropriate measure of damages is the amount that Verex would have paid in accordance with its certificate of insurance but for First Mortgage's failure to obtain valid and enforceable mortgage insurance from Verex.

3. It is stipulated that the certificate of insurance issued by Verex with regard to the Roberson loan provides for "Veresure" coverage and that the total verified claim amount on the Roberson loan was $222,481.27.

4. It is additionally stipulated that under the certificate of insurance Verex could have paid the entire amount of the verified claim and taken ownership of the property collateralizing the loan but it did not. Consequently, the parties agree that, had the certificate of insurance become effective, Verex would have been obligated to pay the higher of the "standard coverage amount" or the amount determined by using Verex's "Veresure calculations."

5. The parties agree that the "standard coverage amount" is $44,496.25 (i.e. 20% of $222,481.27).

6. The "Veresure calculations" set forth in the certificate would have obligated Verex to pay "the claim amount in excess of 75% of the original value of the property." The original value is defined as the lesser of the appraised or sale amount.

7. The certificate further provided for a "sales price" of $210,000 and an "appraised value" of $210,000.

8. Using the "Veresure calculations," Verex would have been obligated to pay $222,481.27 minus $157,500 (75% of $210,000) or $64,981.27.

**Additional Conclusions of Law**

■ 1. Under Louisiana Civil Code article 1994, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation." Damages for breach of contract are intended to place the plaintiff in the same position he would have been in had the defendant not breached the contract. *Fussell v. Louisiana Business College of Monroe, Inc.*, 519 So.2d 384 (La.App.2d Cir. 1988).

■ 2. The court concludes that the measure of damages suggested by the RTC is appropriate. That is, damages should be fixed by determining the amount plaintiff would have been paid under Verex's certificate of insurance had the conditions precedent been met and the mortgage insurance become effective.

3. Had there been valid insurance, Verex would have paid $64,981.27 under the "Veresure calculations" (as computed above) as this amount was higher than the standard coverage amount.

4. The court rejects the argument made by the RTC that damages should be calculated using a "sales price" of $189,000. The RTC contends that the amount of damages should be $80,731.27 ($222,481.27 less 75% of $189,000) because the court previously found that the Robersons did not make the $21,000 down payment and thus the sales price was actually $189,000. The flaw in this argument is that it overlooks the fact that had First

Mortgage obtained valid mortgage insurance, it would have been based on the conditions set forth in the certificate of insurance. The certificate clearly provides for coverage based upon a sales price of $210,000.

5. The RTC additionally submits that the court should award prejudgment interest at the legal rate from November 3, 1987, which is sixty days after Verex received the claim for loss. The RTC argues that interest should commence on that date because a claim for insurance proceeds is payable within sixty days under Louisiana law.

6. In response, Premier, as successor to First Mortgage, argues that it should not be cast in the same light nor held accountable in the same manner as an insurance company. Premier observes that it filed the claim with Verex on Gibraltar's behalf and it would be unreasonable to assess interest during this time. Premier contends that interest should run from date of judicial demand.

7. The RTC's reply is that the purpose for awarding prejudgment interest is to essentially reimburse the plaintiff for the loss of use of funds. The RTC contends that but for the breach it would have recovered under the policy within sixty days of submission of the claim and that it could have invested the proceeds in other projects.

8. Unlike post judgment interest which is controlled by 28 USC § 1961, requests for prejudgment interest in diversity cases are governed by state law. *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613 (5th Cir.1988). Under Louisiana law, interest on contractual damages may be awarded from date of judicial demand or from· such earlier date as the claim became due and ascertainable. See, *Trans–Global Alloy Ltd. v. First Nat. Bank of Jefferson Parish*, 583 So.2d 443 (La.1991); *Alexander v. Burroughs Corp.*, 359 So.2d 607 (La.1978); *Mini Togs Products, Inc. v. Wallace*, 513 So.2d 867 (La.App.2d Cir.1987), writs denied, 515 So.2d 447, 451 (La.1987).

9. If the court had found the insurance policy valid and enforceable, the RTC's argument that the debt was due and ascertainable within sixty days of submission of the claim would be persuasive. However, the court ruled the other way, finding First Mortgage breached its contractual warranty. The RTC has failed to convince the court that the damages owed by First Mortgage were readily due and ascertainable prior to judicial demand. See, *Trans–Global Alloy*, supra. Consequently, the court finds that prejudgment interest should be awarded at the legal rate from date of judicial demand.

Judgment will be entered accordingly.