hAMY, Judge.
The plaintiff, a construction company, and the defendant entered into a contract for the construction of a restaurant. The plaintiff contends the defendant failed to honor the contract and seeks out-of-pocket expenses and lost profits. The defendant contends the contract was contingent on his ability to obtain financing. The trial court found in favor of the plaintiff. The defendant appeals. We affirm.
Factual and Procedural Background
This matter involves a contract entered into for the construction of a restaurant in Alexandria, Louisiana. The plaintiff, Foster Construction Company, Inc., alleges that it entered into the contract in which it agreed to construct a restaurant to be called The New Orleans Connection Restaurant for the sum of $199,516.00. Of this figure, $28,008.50 was designated as the company’s overhead and profit. The agreement was signed by Michael D. Foster, the owner of Foster Construction, and the defendant, Otis Wafer. The contract provided that the project would move toward completion “After all Building Permits have been received and upon Notice to Proceed.” A notice to proceed is contained in the record and contains Mr. Wafer’s signature. It is dated September 24, 1997.
Mr. Foster testified that Foster Construction obtained a building permit and did some survey work on the property and began to try to contact Mr. Wafer. He stated that attempts at contact were unsuccessful. Foster Construction filed suit on January 30, 1998, alleging that the defendant had breached the contract by permitting others to begin construction on the project. According to Mr. Foster’s testimony at trial, part of the contract entered *1274 into provided that Foster Construction would remove the existing slab on the proposed restaurant site. He stated that he went to the site, observed that the concrete had been removed, and dirt placed on the property. Suit was filed seeking the profits designated in the contract, $28,008.50.
|p.Mr. Wafer answered the petition and argued that the plaintiff was aware that the contract was conditioned upon the ability to obtain financing and that construction would not proceed if financing was unavailable. He further stated that “Your defendant shows that every financial institution he tendered this project to rejected it and, as of this day, he has no funds for this project.”[1] In answering a supplemental petition filed by the plaintiff, Mr. Wafer stated that he did not recall signing a notice to proceed, but he did, however, acknowledge that the signature on the document was his. He stated that he also signed other documents without reading them because he and the Foster Construction representative, John Hammond, had a “relationship built on trust” and that, at the time of signing he understood the condition was subject to his ability to obtain financing. With regard to the removal of the slab, he stated “he had learned that a service station had been built on the location and he demolished the slab and now has doubts as to whether or not a restaurant could have been built on the location even though he was assured by the agent of Foster Construction Company Inc. that the land was suitable for [the] construction of a restaurant.”
Following trial, judgment was entered in favor of Foster Construction. In written reasons for ruling, the trial court explained:
Louisiana Civil Code Article 2765 provides, “the proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.” The Second Circuit in the case of Harrington v. Oliver, 459 So.2d 111 (La.App. 2 Cir.1984), notes the interpretation of this article by Louisiana Courts as follows,
|3The damages which a contractor is entitled to receive in excess of his labor and material cost expended at the time the proprietor terminates the contract are the profits which he would have made had he been permitted to complete the contract. He is to be placed in the same position he would have occupied if he had completed the contract. Forrest and Crocker v. Caldwell and Hickey, 5 La.Ann 220 (1850); Dugue v. Levy, 114 La. 21, 37 So. 995 (1904); Tom Black & Associates v. Thibaut Const. Co., 420 So.2d 1150 (La.App. 5th Cir. 1982).
[[Image here]]
The Court finds from the testimony adduced at trial that the parties agreed upon the submission of a “notice to proceed,” because Wafer did not have his funding situation finalized at the time the parties entered into the contract. The purpose of the “notice to proceed” was to prevent Wafer from being bound to the terms of the contract until funding could be procured. Wafer, a licensed contractor in Jefferson Parish, knew or should have known that the submission of the “notice to proceed” bound him to the terms of the contract.
Accordingly, under the provisions of La.C.C. art. 2765 and its corresponding jurisprudence Wafer is bound to Foster in the amount of $2,262.30 for expenses *1275 incurred,[2] and $28,008.58 for lost profits. Defendant is to pay court costs.
(Footnote added.)
The defendant appeals assigning the following as error:
1) The trial judge abused his discretion when he concluded that the defendant’s inability to get financing to fulfill the contract in question was not a valid cause for his not fulfilling the contract and, in fact, constituted an arbitrary rescission of the contract.
2) The trial judge abused his discretion when he awarded to plaintiff the full amount of the profit plaintiff would have received had he completed the contract after concluding that defendant failed to fulfill the contract because he could not get financing.
3) The trial judge erred when he failed to rule that there was a meeting of the minds between plaintiff and defendant in the reduction of the contract in that the contract was in fact reduced from $199,000.00 |4and $99,000.00 and, therefore, loss of profit should have been reduced accordingly.
Discussion

Louisiana Civil Code Article 2765

As seen above, the trial court referenced La. Civ. Code art. 2765 in awarding damages to the plaintiff. Article 2765 provides:
The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.
In his first two assignments of error, the defendant contends that Article 2765 permits damages only in the presence of “willful intent to cancel the contract without any legal or rational basis.” For this proposition, he cites Thibodeaux v. Kern, 143 So.2d 422, 425 (La.App. 3 Cir.1962), wherein the court addressed damages under the Article and stated:
The phrase, ‘such damages as the nature of the case may require’, has almost invariably been interpreted to include the ‘loss of profit’ because of the cancellation. However, when the owner cancels his contract for sufficient cause, Civil Code Article 2765 ceases to be the standard of the owners’ liability and the contractor may not recover for loss of profit. See Peterson v. Sutter, 4 La.App. 180.
The defendant asserts that his inability to obtain financing is evidence of sufficient cause and, thus, an award of lost profits was improper.
Reference to the wording of Article 2765 provides for the award of, not only “the expense and labor already incurred,” but additionally for “such damages as the nature of the case may require.” Whether there was sufficient cause as urged by the defendant is not the issue here and, even if it were, the record supports the trial court’s finding. As expressly permitted by the Civil Code, the trial court determined that the “nature of the case” required the award of lost profits. The court did so by | spointing out factors related to the factual background of the relationship and the contract. The court observed that Mr. Wafer signed a notice to proceed, a procedure specifically provided for in the contract. Also, the court considered that Mr. Wafer entered into the contract to build as a businessman, himself a contractor. Finally, on review we point out that, although Mr. Wafer asserts that the plaintiff *1276 was aware that the contract was contingent on financing, the evidence permits a finding that it was not based on such a contingency. First, the contract itself contains no financing contingency and Mr. Foster, the other signatory to the contract, stated that he knew of a bank refusing funding prior to the contract, but denied knowing of any other funding problems. Furthermore, both Mr. Foster and John Hammond, the Foster Construction employee who worked with the defendant on the project, stated that Mr. Wafer informed them that he had $150,000.00 in funding from investors and that he understood the remainder would be financed. Mr. Hammond denied that Mr. Wafer informed him he was unable to obtain financing on the project. While the court may have concluded that profits were not owed under Article 2765, due to the “nature of the case,” it did not do so, and, based on the evidence discussed above, we find no manifest error in that determination.

Reduction of Contract Price

In his final assignment of error, Mr. Wafer advances an alternative argument, ie., that even if profits are due, they are due in an amount less than those Foster Construction would have received under the contract for $199,516.00. The basis for this argument is the fact that Mr. Foster testified that a change order had been contemplated whereby the contract would be amended and the price reduced to $90,596.00. He stated he thought that Mr. Wafer wanted to do some of the work inside the restaurant himself. Thus, Foster Construction completed a change order | ¿reflecting the reduced figure. It was sent to Mr. Wafer. However, the change order was never signed nor returned by Mr. Wafer. He argues that “[ejven though the contract was not formally signed, there was a meeting of the minds between the parties that the reduced amount of the contract was $99,000.00 and, therefore, if the court felt that damages for loss of profit should have been awarded, it should have been awarded on a $99,000.00 contract and not a $199,000.00 contract[3]
La.Civ.Code art. 1927 provides:
A contract is formed by the consent of the parties established through offer and acceptance.
Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.
At trial, the testimony of each party indicates there was no offer and acceptance, let alone a meeting of the minds with regard to any reduction in the contract price. Mr. Foster testified he would have agreed to the reduced contract price, but the company never received a written signed change from Mr. Wafer. Mr. Foster stated that change orders are, at times, written for the other party to determine whether they want to proceed with the change. He testified there is no valid change order until it is signed by both parties. Mr. Foster stated that “it really all boils down to there’s not going to be any changes until there are signatures.” Further, in a proffer of his testimony offered by his counsel,[4] Mr. Wafer stated:
*1277 |7Q. Did you, uh, get together with a representative of Foster Construction Company and get an addendum to the contract?
A. Yeah, we talked — I went through the contract and picked out items that I may be able to afford if I would take the third mortgage on my home. And at that point, uh, the items I picked out came to about $68,000.00. Called John [Hammond] told him I might be able to raise six, uh, I might be able to get these items done. But after the $68,000.00 worth of items that I pulled out were submitted to him he sent me a change of $90,000.00. So that was why no, you know, no progression proceeded at that point. Was because what I thought that should cost according to his original estimate was now saying 90,000.
Q. Was it your understanding that, uh, why did you sign the, uh, reduced contract?
A. No, because still it wasn’t anything that could be afforded. The 90,-000 still wasn’t a[n] affordable number in terms of what I could actually pay him to do.
Mr. Wafer’s argument regarding the possibility of an amended contract is problematic as there is no indication Mr. Wafer ever signed the change order form. Alternatively, neither is there indication that there was any type of oral acceptance. Accordingly, this assignment is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the defendant, Otis Wafer.
AFFIRMED.
THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
SAUNDERS, J., concurs in part and dissents in part for the reasons assigned by Judge THIBODEAUX.

. Mr. Wafer also filed a reconvéntional demand seeking damages associated with the filing of the suit which he alleges tarnished *1275 his reputation. He also sought sanctions for the filing of the suit.

. On November 17, 1997, after learning of the removal of the slab and prior to filing suit, Foster Construction billed the defendant for $2,262.30 for expenses incurred. According to the demand letter, these expenses related to "the building permit, survey cost, phone calls, estimating, and travel expenses on the referenced project.” These incurred costs were awarded in the trial court's judgment.

. Although Mr. Wafer asserts in brief that the change order reflected a reduced contract price of $99,000.00, the proposed change order admitted into evidence reflects a contract price of $90,596.00.

. The portion of Mr. Wafer's statements regarding the alleged amended contract was admitted under proffer after the trial court sustained the plaintiff’s objection that the testimony was being admitted in an attempt to modify the terms of a written contract. The court also stated that it found the matter to be a “legal question not a [actual question.” We do not, here, address the trial court’s exclusion of the testimony regarding the purported modification as the correctness of the deter- *1277 minalion has not been raised by the defendant. Rather, we include the portion of the transcript as it is required for discussion of Mr. Wafer’s assignment.